```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

ODISE CARR,                        :    Civ. A. No. 09-4717(NLH)(KMW)

        Plaintiff,                 :

              v.                   :    OPINION

CITY OF CAMDEN,                    :
CITY OF CAMDEN POLICE
DEPARTMENT, JOHN SOSINAVAGE,       :
SCOTT THOMPSON[1] and
MARIO ORTIZ,                       :

        Defendants.                :
```

**APPEARANCES**:

WILLIAM H. BUCKMAN
LILIA LONDAR
110 MARTER AVENUE
SUITE 209
MOORESTOWN, NJ 08057
    On behalf of plaintiff

DANIEL EDWARD RYBECK
JOHN C. EASTLACK , JR.
WEIR & PARTNERS LLP
THE LIBERTY VIEW BUILDING
457 HADDONFIELD ROAD, SUITE 310
CHERRY HILL, NJ 08002
    On behalf of defendants City of Camden, City of Camden
    Police Department, and Scott Thomson

STUART W JAY
TAYLOR AND JAY, LLC
20 EAST CENTRE STREET
WOODBURY, NJ 08096
    On behalf of defendant John Sosinavage

RALPH RAYMOND KRAMER
605 WHITE HORSE PIKE
HADDON HEIGHTS, NJ 08035
    On behalf of defendant Mario Ortiz

---

[1]Defendant's name is properly spelled "Scott Thomson."

**HILLMAN, District Judge**

Presently before the Court are the motions of defendants for summary judgment on plaintiff's claims that defendants violated his federal and state constitutional rights by retaliating against him for exercising his right to free speech.  For the reasons expressed below, defendants' motions will be granted.

## BACKGROUND

On July 29, 2008, plaintiff, Odise Carr, a police officer with the Camden City Police Department since August 1999, testified pursuant to a subpoena in a disciplinary hearing of two fellow officers.  The officers were being investigated for leaving early from their shifts on the telephone reporting unit, an infraction referred to by the parties as "time-stealing."  At the hearing, held by the Office of Internal Affairs, plaintiff testified that when he was assigned to the telephone reporting unit his supervisors allowed him to leave early from his shift on a regular basis.  According to plaintiff, the supervisors had denied that they allowed the officers to leave early.

A year prior to the hearing, plaintiff had provided a statement similar in substance,[2] and apparently sworn to, to the officers' attorney, who shared plaintiff's statement with the

---

[2]The parties whether the prior statement differed materially from the testimony at the hearing.  For reasons later explained, that dispute is not material to the present motion.

2

internal affairs unit at that time.  Even though the internal affairs unit had known the content of plaintiff's proffered testimony prior to the hearing, plaintiff claims that after the hearing defendant Mario Ortiz, a sergeant in the internal affairs unit who attended the hearing that day, remarked to plaintiff, "Do you know what you've just done?", and ordered plaintiff to appear in his office the next day.  Plaintiff came to Ortiz's office on July 30, 2008, and Plaintiff secretly recorded the conversation in order to "protect himself."  Plaintiff claims that Ortiz intimidated and threatened him because he had testified against his superiors in support of his fellow officers.

Approximately two and a half months later, on October 15, 2008, plaintiff was charged administratively with improper conduct arising from an arrest of a juvenile in October 2005.  After the arrest of the juvenile during a "buy/bust" operation in a high intensity drug trafficking area, the juvenile, A.F., claimed that the arresting officers, including plaintiff, assaulted him.  The Camden County prosecutor's office started an investigation, and on January 30, 2006, it issued a letter of stay prohibiting any administrative investigation until the completion of the criminal proceedings.  Plaintiff was temporarily placed on administrative duty.

On June 4, 2008, a little less than two months before the

disciplinary hearing and approximately ten months after plaintiff proffered his testimony to the attorney for his fellow officers, the prosecutor's office sent a letter to the Camden Police internal affairs unit informing them that the criminal case was closed, and that it could proceed with any administrative action. No criminal charges were filed against plaintiff.

Sometime thereafter, and roughly contemporaneously with plaintiff's testimony in the time-stealing case, defendant John Sosinavage, a lieutenant in the internal affairs unit, decided to further pursue an investigation of the A.F. incident. On July 21, 2008, a little over a week before the disciplinary hearing and therefore before plaintiff's testimony at that hearing, Sosinavage obtained a written statement from one of the officers at the scene that day. He also interviewed plaintiff on October 6, 2008, and two other involved officers on October 15, 2008. On October 16, 2008, Sosinavage reported his findings to the business administrator, who signed charges against plaintiff and the other three officers.[3]

On July 8, 2009, plaintiff was removed as a police officer. He appealed. A hearing was held before an administrative law judge who found that the Camden City police department had not met its burden of proof by a preponderance of credible evidence

---

[3]Defendants assert that Chief Thomson was recused from the matter because he served as head of the HIDTA task force. Plaintiff disputes this but again the dispute is not material.

that plaintiff assaulted A.F. or in any other way conducted himself in a manner that was unbecoming an public employee. Plaintiff as was reinstated with back pay and seniority.

On September 14, 2009, plaintiff filed the instant suit against the City of Camden and its police department,[4] the police chief, Scott Thomson, and Ortiz and Sosinavage, claiming that the investigation into the A.F. matter and his ultimate termination were in retaliation for his testimony at the time-stealing disciplinary hearing.[5]  Defendants have moved for summary judgment on plaintiff's claim, and plaintiff has opposed defendants' motions.

---

[4]A municipality and its police department are a single entity for the purposes of § 1983 liability. Boneberger v. Plymouth Township, 132 F.3d 20, 25 n.4 (3d Cir. 1997).  Thus, plaintiff's claims against the police department must be dismissed.

[5]In his complaint, plaintiff also brought claims that defendants violated CEPA and plaintiff's due process rights.  A plaintiff who brings a CEPA claim must demonstrate that: (1) he reasonably believed that his employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3; (3) an adverse employment action was taken against him; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. Dzwonar v. McDevitt, 828 A.2d 893, 900 (N.J. 2003).  To prevail on a procedural due process claim, a litigant must show (1) that the state deprived him of a protected interest in life, liberty, or property and (2) that the deprivation occurred without due process of law. Burns v. PA Dept. of Correction, 544 F.3d 279, 285 (3d Cir. 2008). Plaintiff has not opposed defendants' motions for judgment on these claims, and the Court finds that there is no evidence in the record to support such claims.  Accordingly, judgment shall be entered in defendants' favor on these claims.

**DISCUSSION**

    A.    **Subject Matter Jurisdiction**

Plaintiff has brought federal constitutional claims pursuant to 42 U.S.C. § 1983, as well as claims under New Jersey law. This Court has jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over plaintiff's related state law claims under 28 U.S.C. § 1367.

    B.    **Standard for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed and

6

all justifiable inferences are to be drawn in his favor." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323; see Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C.   Analysis**

Plaintiff contends that his free speech rights were violated when defendants threatened him with, and then followed through with, disciplinary action in retaliation for his testimony against his superiors.  In contrast, defendants argue that disciplinary charges against plaintiff for the A.F. incident were completely unrelated to his testimony, and the timing was purely coincidental.

As a primary matter, the Court will only consider plaintiff's free speech retaliation claims against Ortiz and Sosinavage.  Plaintiff has not supported his claims against, or otherwise refuted the motions of, the City of Camden and Chief Thomson.  Plaintiff has not demonstrated any involvement by Thomson into his allegations of retaliation, and he has not articulated any policy or custom of the City that supports such retaliation.  See Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 72 (3d Cir. 2011) (citations and quotations omitted) (explaining that in a § 1983 action, liability can only be imposed if a plaintiff demonstrates a defendant's personal involvement through allegations of personal direction or of actual knowledge and acquiescence, a supervisor tolerated past or ongoing misbehavior, or if he or she implements a policy or practice that creates an unreasonable risk of a constitutional violation on the part of the subordinate and the

8

supervisor's failure to change the policy or employ corrective practices is a cause of this unconstitutional conduct); <u>Monell v. New York City Dept. of Soc. Servs.</u>, 436 U.S. 658, 691 (1978); <u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 583-84 (3d Cir. 2003) (explaining that liability under § 1983 may be imposed on municipalities where acts of the government employee are deemed to be the result of a policy or custom of the municipality for whom the employee works).  Consequently, the City of Camden and Thomson are entitled to summary judgment in their favor on plaintiff's claims against them.

In order to maintain his free speech claim against Ortiz and Sosinavage, plaintiff must show: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action.  <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 241 (3d Cir. 2006) (citation omitted).  The first factor is a question of law; the second factor is a question of fact.  <u>Id.</u> (citation omitted).

As to the first factor, a public employee's statement is protected activity when: (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have "an adequate justification for treating the employee differently from any other member of the general public" as a result of the statement

9

he made.  Reilly v. City of Atlantic City, 532 F.3d 216, 231 (3d Cir. 2008) (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)).  The parties do not dispute that plaintiff's testimony at the other officers' disciplinary hearing constitutes protected activity.  See Reilly, 532 F.3d at 231 ("[T]he act of offering truthful testimony is the responsibility of every citizen, and the First Amendment protection associated with fulfilling that duty of citizenship is not vitiated by one's status as a public employee.  That an employee's official responsibilities provided the initial impetus to appear in court is immaterial to his/her independent obligation as a citizen to testify truthfully.").

With regard to the second factor - that plaintiff's testimony was a substantial factor in his discipline in the A.F. incident - under either the United States Constitution or New Jersey's Constitution, plaintiff must offer to prove facts that show a causal connection between some adverse action and the protected conduct.  Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006); Borden v. Sch. Dist. of Twp. of E. Brunswick, 523 F.3d 153, 164 n. 5 (3d Cir.2008) (noting that analysis of New Jersey's free speech clause is same as analysis under United States Constitution).  If plaintiff does so, defendants may defeat plaintiff's claim by demonstrating that they would have taken the same adverse action in the absence of plaintiff's protected conduct.  Mt. Healthy City Sch. Dist. Bd. of Educ. v.

Doyle, 429 U.S. 274, 287 (1977).

Defendants contend that Plaintiff has failed to offer sufficient facts from which a reasonable jury could conclude that plaintiff's testimony had anything to do with the investigation into the A.F. incident.  Defendants contend that the A.F. matter was completely unrelated to the time-stealing matter, and that it was pure coincidence that the county prosecutor's office extinguished the stay on the department's ability to pursue administrative charges in the A.F. matter around the same time that plaintiff was to provide testimony.[6]

In support of their position, defendants argue that the investigation into the A.F. matter was proper, thorough, and the outcome - the discipline of three other officers in addition to plaintiff - was warranted and appropriate.  Defendants argue that the decision to investigate the A.F. incident and the resulting findings would have occurred exactly the same way and at the same time regardless of plaintiff's testimony.

Plaintiff has presented the following evidence to support his case:

   1.   After plaintiff testified, Ortiz approached plaintiff

---

[6]Defendants also argue that plaintiff's free speech rights could not have been violated because no one attempted to stop him from testifying, and no one encouraged him to change his testimony prior to testifying.  Plaintiff, however, is not arguing that his free speech rights were interfered with; rather, that the exercise of his free speech right resulted in retaliation.

11

and asked, "Do you know what you've just done?" The next day, during plaintiff's secretly taped conversation with Ortiz, Ortiz admonished plaintiff about giving testimony at the hearing that conflicted with his prior sworn statement. Ortiz informed plaintiff that he could be charged with "untruthfulness," and that his job could be in serious jeopardy. Ortiz stated that if plaintiff had testified inconsistently in a federal case, "you'd be done." Ortiz told plaintiff that he would recommend that plaintiff receive counseling on the mechanics of courtroom testimony.

    2.   After plaintiff testified at the disciplinary hearing, Sosinavage became concerned about plaintiff's testimony for two reasons, although he cannot recall the second reason. The main reason Sosinavage was concerned was that he felt that plaintiff's initial statement to the disciplined officers' attorney was inconsistent with his testimony at the hearing.[7] (See Sosinavage Dep., Docket No. 25-10 at 3.)

    3.   Contemporaneous with plaintiff's testimony at the time stealing hearing, Sosinavage determined that the A.F. incident needed further investigation, despite the fact that even though two other officers involved were charged with offenses, plaintiff

---

[7] Sosinavage opened an internal investigation into the matter, but because of plaintiff's administrative proceedings concerning the A.F. discipline, Sosinavage's investigation had to be stayed and, ultimately, abandoned.

was not charged.  Sosinavage wanted to continue the investigation to hear plaintiff answer some more questions about A.F. being struck with the flashlight that plaintiff was purportedly carrying.[8]  (See Sosinavage Dep., Docket No. 25-10 at 5-9.)

    4.   Ortiz worked under Sosinavage in the internal affairs unit.

    5.   Sosinavage presented the results of his investigation to the business administrator, who signed disciplinary charges against plaintiff and three other officers.

    6.   Plaintiff's termination was rescinded after an ALJ found that no evidence linked plaintiff to the assault on A.F.

As defendants have argued, this evidence is not sufficient to establish that plaintiff's testimony at the disciplinary hearing was causally related to the administrative charges that stemmed from the 2005 A.F. incident.  First, with regard to Ortiz, even if the conversation between plaintiff and Ortiz were to be construed as plaintiff suggests - that Ortiz threatened plaintiff with discipline because he truthfully testified that his supervisors sanctioned the telephone unit officers' time-stealing[9] - plaintiff did not suffer any retaliation by Ortiz as

---

[8]Plaintiff asserts that he had borrowed another officer's flashlight when he realized he had forgotten to bring his when the A.F. warrants were executed.

[9]After listening to the audio recording and reading the transcription of the conversation between plaintiff and Ortiz, a reasonable jury could easily conclude that, far from acting with

13

a result.  Plaintiff was never sanctioned for his purported inconsistent statements nor did Ortiz suggest that such a charge would be appropriate (indeed he suggested the opposite). Additionally, just because Ortiz worked in the internal affairs unit does not demonstrate that Ortiz's conversation with plaintiff caused Sosinavage to reopen the A.F. investigation. Plaintiff has not provided any evidence to connect the Ortiz conversation with Sosinavage's decision to continue the A.F. investigation.

Second, with regard to Sosinavage, plaintiff has not articulated how Sosinavage's decision to continue the investigation of plaintiff was unreasonable (and therefore suspect as suggestive of ill motive) at the time the decision to re-open the matter was made, given A.F.'s statement that it was plaintiff who struck him in the head with a flashlight, and the fact that Sosinavage also reopened the investigation into three other officers.  Moreover, plaintiff cannot refute that the basis

---

the intent to retaliate, the conversation was an attempt by Ortiz to help plaintiff understand: (1) the significance of deposition testimony and trial testimony, (2) the potential repercussions of conflicting testimony, and (3) how plaintiff's testimony could be construed as an admission that he himself had committed "time-stealing."  Far from being threatening, Ortiz suggested that if such charges were ever brought he would recommend counseling rather than discipline.  Even assuming, as we must as the party opposing summary judgment, that Plaintiff's characterization of Ortiz's motion is fairly drawn, defendant would still prevail as Plaintiff has failed to offered any evidence that: 1) Ortiz influenced the A.F. investigation or that 2) Sosinavage shared any animus held by Ortiz.

14

for the ALJ's decision to reinstate plaintiff to the police department was based, at least in part, on the fact that A.F. had recanted the statements he had made previously to the Camden County prosecutor and to the internal affairs unit, not that the investigation and charges were insufficiently predicated. Absent more, a failure of proof at trial is not evidence of a case improperly brought. If that were true, every acquittal in a criminal case would amount to a charge of prosecutorial misconduct and every finding of no cause in a civil case a mandate for Rule 11 sanctions.

Plaintiff argues that a jury could believe that Sosinavage's true motivation to continue the investigation into plaintiff's involvement in the A.F. matter was in retaliation for plaintiff testifying against his supervisors. However, that would be pure speculation. Plaintiff, has not pointed to one piece of evidence to suggest that motivation or otherwise support a claim of concerted action by Ortiz and Sosinavage. It is not disputed that plaintiff felt concerned about testifying against his superiors, and that he felt concerned about his conversation with Ortiz. It is also not disputed that around the same time as his testimony and conversation with Ortiz, the stay on the department's internal investigation into the A.F. matter was lifted and Sosinavage decided to further investigate the matter. The temporal proximity of these two events, without any evidence

15

that one influenced the other, is insufficient to support a free speech retaliation claim. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000) ("[T]emporal proximity alone will be insufficient to establish the necessary causal connection when the temporal relationship is not 'unusually suggestive.'").[10]

Providing testimony at an internal affairs hearing cannot cloak plaintiff with immunity for all his past or future conduct which might warrant investigation or discipline. Simply because plaintiff engaged in protected speech does not preclude any subsequent adverse action by his supervisors or employer. When those two events occur, it is plaintiff's burden to provide some evidence to connect the two.[11] See Monteiro v. City of Elizabeth, 436 F.3d 397, 404-05 (3d Cir. 2006) (explaining that where a constitutional violation depends on evidence of a

---

[10]Here the temporal relationship is not suggestive of retaliation. First, the delay in the investigation was occasioned by the stay issued by the prosecutor's office while the office considered criminal charges. Second, the A.F. matter was reopened by Sosinavage shortly after the stay was lifted and before plaintiff testified at the disciplinary matter. And lastly, Camden Internal Affairs had known for almost a year that Plaintiff would testify for the officers at the hearing and Plaintiff offers no evidence that he was the subject of any adverse actions prior to the reopening of the A.F. matter.

[11]We recognize that plaintiffs may not always have direct evidence of retaliatory intent and that circumstantial evidence can provide the necessary quantum of proof. However, rank speculation and unwarranted and merely hopeful inferences do not equate to evidence.

specific intent, a plaintiff must provide sufficient evidence of the alleged retaliatory motive in order to go to a jury); cf. Reilly v. City of Atlantic City, 532 F.3d 216, 233 (3d Cir. 2008) (finding the following sufficient evidence to go to the jury on plaintiff's first amendment retaliation claim: an inference from the evidence that Snellbaker was aware of Reilly's role in the Munoz investigation, that he was frustrated by Flower's disciplinary recommendation, and that he conspired with Flipping to force Reilly into retirement).[12]  Plaintiff has failed to do so here.

## CONCLUSION

Accordingly, for the foregoing reasons, defendants' motions for summary judgment must be granted.  An Order consistent with this Opinion will be entered.

Dated: September 13, 2012            s/ Noel L. Hillman
At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.

---

[12] Because the Court has found that plaintiff cannot support his free speech retaliation claim, the Court need not address whether defendants are entitled to qualified immunity. See Pearson v. Callahan, 129 S. Ct. 808, 816 (2009) (In order to determine whether a government official is entitled to qualified immunity, two questions are to be asked: (1) has the plaintiff alleged or shown a violation of a constitutional right, and (2) is the right at issue "clearly established" at the time of the defendant's alleged misconduct?  If the answer to either question is "no," the analysis may end there.).